George R. WILLIAMS et al., Appellants,

v.

PACIFIC MARITIME ASSOCIATION
et al., Appellees.

No. 20719.

United States Court of Appeals
Ninth Circuit.

Aug. 28, 1967.

Rehearings Denied Oct. 30, 1967.

Irving A. Thau, New York City, Francis Heisler, Carmel, Cal., Arthur Brunwasser, San Francisco, Cal., for appellants.

Richard Ernst, Mary C. Fisher, Dennis T. Daniels, San Francisco, Cal., for appellee Pacific Maritime Ass'n.

Gladstein, Anderson, Leonard & Sibbett, Norman Leonard, San Francisco, Cal., for appellees International Longshoremen's & Warehousemen's Union et al.

Before POPE, HAMLEY and MERRILL, Circuit Judges.

POPE, Circuit Judge:

This is an appeal from an order dismissing the fourth amended complaint. This complaint alleges that the defendant Pacific Maritime Association represents all the employers who bargain with employee members of the International Longshoremen's and Warehousemen's Union (ILWU) and its affiliated local union, Local No. 10, ILWU and Local 10, also defendants, are labor unions, and ILWU is the certified collective bargaining representative for all employees of the employer members of Pacific Maritime Association (PMA) on the Pacific Coast engaged in loading and unloading vessels and operations incidental thereto including warehousing. ILWU and Local 10 are the exclusive bargaining representatives for all such employees.

Heretofore PMA signed a succession of collective bargaining agreements with ILWU and Local 10. At the time here in question an agreement was in effect covering the period June 16, 1961 to July 1, 1966. Rules relating to registration and deregistration of longshoremen in the Port of San Francisco, adopted about March 18, 1958, were a part of that agreement, and remained in effect until new rules relating thereto were adopted about June 17, 1963.

The complaint then alleges that the two labor unions, ILWU and Local 10, as exclusive bargaining representatives exercising statutory rights, owed a fiduciary duty to all longshore employees under this agreement, including Williams and 50 other employees who are made plaintiffs. This duty, it is alleged, includes the duty to represent such employees fairly, and to give all such employees an opportunity to know of and to be heard concerning all collective agreements and changes and modifications thereof.

The collective bargaining agreement provided for two classes of longshoremen. One was Class A, who had priority to available work. The other was Class B, who had limited rights to available work, and were not eligible to membership in Local No. 10. The rules stated standards for class B Longshoremen, and standards and procedures for their promotion to class A and for their possible deregistration.

Up until June 17, 1963, all plaintiffs were class B longshoremen under the collective bargaining agreement. They were, and had been for four years, registered as such and in good standing. It is alleged on the date mentioned the defendants (employer and unions) decided on deregistration of the plaintiffs. This was purportedly made pursuant to a new set of rules adopted a few weeks prior thereto. Plaintiffs were never informed of those new rules; they were never given an opportunity to be heard respecting their application.

It is alleged that these new rules were arbitrary, not reasonably relevant to the treatment afforded class B longshoremen; they were capricious, arbitrary and unfair, particularly as they were applied retroactively and to conduct that was not a violation of any rule when it occurred; and that they were applied discriminatorily against plaintiffs.

Plaintiffs allege they have exhausted all remedies under the agreement and have finally been deregistered so that they are now without livelihood, and that in agreeing to these new rules the unions have failed to represent plaintiffs fairly and have arbitrarily denied them their rights to work as longshoremen.

Other class B longshoremen were not deregistered. It is alleged that plaintiffs were thus discriminated against, and they were denied their rights under the union contract, all to plaintiffs' damage.

■ Because the ruling is based not only upon the complaint and the motion to dismiss it, but also upon matters presented by affidavit outside the pleading, the order appealed from was in fact an order for summary judgment under Rule 56 as required by Rule 12(b).

The complaint combines two distinct claims: one is a claim similar to that involved in Vaca v. Sipes, (Feb. 27, 1967), 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842,[1] and the other is a claim by the em-

---

[1]. Page 177, 87 S.Ct. 909: "It is now well established that, as the exclusive bargaining representative of the employees in Owens' bargaining unit, the Union had a statutory duty fairly to represent all of those employees, both in its collective bargaining with Swift, see Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; Syres v. Oil Workers International Union, 350 U.S. 892, 76 S. Ct. 152, 100 L.Ed. 785, and in its enforcement of the resulting collective bargaining agreement, see Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, see Steele v. Louisville & N. R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173;

ployees against the employer of the kind contemplated by Sec. 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185. (The plaintiff in Vaca also asserted a second claim against the employer.)

The first of these two types of claims, like the one in Vaca, is not based upon an alleged breach of contract between the union or the employee, and the employer, but it is based upon what the Supreme Court calls the "statutory duty of fair representation" of the employees by the union. This doctrine, which originated with Steele v. Louisville & N. R. Co., and which has been extensively applied and extended (see footnote 1, supra), states the fiduciary duty of a union which is the exclusive bargaining representative of employees whether union members or not.

The union contract here provides for several joint labor relations committees. The order deregistering the plaintiffs was the joint order of the Joint Coast Labor Relations Committee composed of representatives of both PMA and the Union. Each group had equal vote or power. "Each side of the Committee shall have equal vote." Thus it appears that the union representatives joined in the deregistration.

The order appealed from indicates that one reason for the court's dismissal of the complaint was that it thought it had no jurisdiction over such a cause of action because exclusive jurisdiction over the alleged wrongful acts lay in the National Labor Relations Board and that the Labor Management Relations Act preempted jurisdiction to deal with breach of fair representation by a union to the Labor Board.

■ In their first briefs in this case the appellees took that view relating to preemption. That view must now be rejected because of the decision in Vaca,

supra, which dealt with a similar contention that a court could not entertain a suit of that character because of such preemption of jurisdiction to the Labor Board. The Court there upheld the jurisdiction of the court to entertain such a suit predicated on claims on unfair representation. It said (pp. 180–181, 87 S. Ct. p. 912): "A primary justification for the pre-emption doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union duty of fair representation."

This preemption doctrine was sought to be applied by counsel in the Vaca case because the Board had held in its Miranda Fuel decision, enforcement denied, 2 Cir., 326 F.2d 172, that a violation of the duty of fair representation by a union was an unfair labor practice over which the Board had jurisdiction. The Fifth Circuit, Local 12 United Rubber Workers v. NLRB, 5 Cir., 368 F.2d 12, unheld the Board's Miranda Fuel doctrine. In Vaca, the Supreme Court did not express any view as to whether Miranda Fuel was right or wrong because the Court held, as indicated above, that assuming jurisdiction in the Labor Board, there was nevertheless an exception to the preemption doctrine which permitted the maintenance of the Vaca suit in a court.

The argument of the Supreme Court is a very cogent one. For instance, the Court noted that the Board's general counsel had unreviewable decision to refuse to institute an unfair labor practice complaint. Therefore the injured party having a valid claim based on denial of fair representation could not be assured of a remedy if the courts were deemed ousted of their traditional jurisdiction in

Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187, and was soon extended to unions certified under the N.L.R.A., see Ford Motor Co. v. Huffman, supra. Under this doctrine, the exclusive agent's statutory authority to represent all mem-

bers of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct".

such cases. At any rate, this reason given by the trial court for denying jurisdiction is demonstrably wrong in view of Vaca.

On its face, the complaint here would appear to state a claim against the union based on the doctrine requiring fair representation of all employees. It alleges that the union is the certified collective representative, and the exclusive collective bargaining representative for all employees loading and unloading vessels; that there was a "collective bargaining agreement" and that as a part thereof, there were certain rules respecting registration and de-registration of longshoremen in the Port of San Francisco, these rules being adopted in 1958.

It is set forth that longshoremen fell into two categories of registration, the preferred employees being called Class A and the limited registered longshoremen, Class B; that in June, 1963, all the plaintiffs were registered as Class B longshoremen, were in good standing, were guilty of no current infractions, had corrected all past violations of rules, and were entitled to assignment for work and were in fact regularly assigned to work.

It is alleged that on the 17th day of June, 1963, the defendants jointly decided on the promotion of some 400 Class B longshoremen to the Class A category and at the same time decided upon the de-registration of all other existing Class B longshoremen, including the plaintiffs who were thereupon notified of their immediate and summary de-registration.

It is alleged that the decision for de-registration of the plaintiffs was made pursuant to "an alleged new set of rules, adopted by the defendants jointly a few weeks prior to the summary notification of the * * * decision to de-register them"; that plaintiffs had been denied notification or knowledge of the adoption of said new rules and that they were never given an opportunity to present their rights or case or views. Both the employers and the union did this.

As appears from information in certain affidavits before the court, the collective bargaining agreement provided for a series of joint labor relations committees; a joint board committee, a joint area committee, and a joint coast committee. These committees are composed of three or more representatives designated by the union and three or more representatives designated by the employers with each side of the committee having equal vote. The action de-registering the plaintiffs was taken by one or more of these committees and likewise the new set of rules was adopted by the same committee, and since under the agreement each side of the committee had an equal vote, it is plain that these things could not have been done except with the approval of the union representatives.

The complaint attacks the alleged new rules as arbitrary, not reasonably relevant to the determination of which Class B longshoremen should be promoted to Class A; that they were irrelevant and capricious in determining who should be de-registered; that the effect of de-registration would deprive a longshoreman of future opportunity for employment; and then paragraph 23 alleges as follows:

"That the rules were arbitrary and unfair as amended in that determination to promote some Class B longshoremen and to de-register others was based on a retroactive application of alleged violations; thereby severely, arbitrarily and capriciously penalizing conduct which was not grounds either for denying promotion to Class A or for deregistration at the time the alleged acts were committed. That conduct which was ground only for a nominal monetary fine, or a reprimand, or for minor disciplinary penalty was retroactively made ground not only for denying promotion to Class A but for total deregistration. That all of this was contrary to the rules which had existed at the time of the alleged acts and for a long time thereafter."

It is to be noted that the complaint is not directed at the failure to put the plaintiffs in Class A. It is related solely to the action taken by the union or its representatives in concurring in the de-registration of these plaintiffs as Class B longshoremen.

It should be noted, also, that the appellants assert the complete invalidity of the so-called new rules. Some of the affidavits filed on behalf of the defendants purport to set out what these new rules were. But, if there were an agreement to such rules, they were not adopted in accordance with the requirements of the basic collective bargaining agreement which provided in Section 22: "No provision or term of this agreement may be amended, modified, changed, altered, or waived except by written document executed by the parties hereto." An examination of the text of the so-called new rules discloses that they do not cover or authorize de-registration of Class B longshoremen; they deal only with the requirements for promotion from class B to class A.

In connection with the defendants' motions to dismiss, they filed certain affidavits. One affidavit was by B. H. Goodenough, vice-president of Pacific Maritime Association. Three additional affidavits were filed by J. A. Robertson, secretary of Pacific Maritime Association. Some of these affidavits were filed prior to the filing of the fourth amended complaint but we can consider them as though they were filed contemporaneously with the motions to dismiss that complaint. None of these affidavits would tend to show that the plaintiffs could not prove the aforesaid allegations of their complaint with respect to the failure of fair representation by the union. None of them would serve to show the validity of the so-called new rules by which these joint committees purported to de-register the plaintiffs. None shows that the rules have anything to do with de-registration of class B longshoremen; nor do they show that any of the plaintiffs deserved de-registration or that they were properly de-registered under any rules, valid or invalid.

Some of the affidavits disclose the powers of joint committees, referred to, and they indicate the manner in which the plaintiffs became registered and they show that the joint committees found against these plaintiffs and ordered them de-registered. But the basis of the complaint is that the union representatives on these joint committees should not have taken such action in that by agreeing thereto they had failed in their fiduciary duty to all longshoremen employees.

As indicated above, the complaint alleged that these plaintiffs were in good standing, were guilty of no current infractions, had corrected all past violations of rules, and were entitled to the assignment for work. Nothing in any affidavit negatives the allegation these plaintiffs were arbitrarily and capriciously being penalized for conduct which was not ground for de-registration at the time the acts were committed; that the de-registration was a retroactive application of alleged violations of invalid rules. Furthermore, many of the assertions made in these affidavits are not entitled to consideration under Rule 56(e) which provides that affidavits must be made on personal knowledge, and that the affiant is competent to testify to the matters stated. None of these affiants would be competent to say whether any of the plaintiffs were guilty of any misconduct or rule violation, or that the action of the union members of these joint committees was anything other than a disregard of the union's duty of fair representation.

As a matter of fact a reading of the affidavits show that they are primarily addressed to the matters relating to the other claim asserted here, namely, the claim against the employer for violation of the collective bargaining agreement. They are designed to support an argument made in connection with that claim, namely, that the plaintiffs cannot recover on the contract because they failed to exhaust the grievance procedures set forth in the contract.

■ Of course, that has nothing to do with the claim against the union because, as indicated in all the decisions cited in Vaca, that claim is based upon a general duty of fair representation based upon a fiduciary obligation. Suppose we were to concede for a moment that the action against the employer cannot be maintained for failure to exhaust the contract

grievance procedures. That might warrant a partial summary judgment dismissing the complaint as against the employer. It would not warrant the broad dismissal as made by the court. In fact, if it were shown that any one of the plaintiffs was entitled to relief, the order of dismissal would be improper. One of the plaintiffs, Stanley L. Weir, filed his own affidavit in opposition to the motions to dismiss. In it he states facts indicating a calculated effort on the part of the union representatives to bring about this affiant's de-registration through conduct indicating hostility, malice and bad faith on the part of union representatives. It is sufficient to say that it shows insistence on false charges, refusal to hear the employee and deliberate evasion of fair consideration. Even if Weir were the only plaintiff who made a showing of this character, the complaint should not have been dismissed as against him.

This brings us to the portion of the case which is based upon a claim of breach of the collective bargaining agreement by the employer. The differences between the parties here turn upon their varying construction of the language used in that contract.

The employers assume that the claim against them is based upon Section 13 of the agreement and argue that Section 13 grievance procedures were never complied with in that the matter was not carried to arbitration. This section reads as follows: "SECTION 13 NO DISCRIMINATION—13.1 There shall be no discrimination in connection with any action subject to the terms of this Agreement either in favor of or against any person because of membership or non-membership in the Union, activity for or against the Union or absence thereof, or race, creed, color, national origin or religious or political beliefs." [2] The appellants say that this has nothing to do with their complaint. They contend this is not a Section 13 discrimination; that it was simply action taken to stop these men from working;—in short, that they were fired as Class B longshoremen.[3]

---

2. It is important to read in connection with Section 13 other sections that make specific reference to it. For instance, Section 17.4, on page 69 of the agreement, makes specific reference to the violations of Section 13. This section is followed by others which may reasonably be construed to refer to grievances arising out of Section 13. These sections, particularly Section 17.43, provide for the carrying of grievance procedures through to arbitration.

3. The appellants' argument on this section reads as follows: "The fact that the defendants *for the first time, long after this litigation was first commenced,* for their own ulterior purposes, designated the complaints of the plaintiffs as being complaints of discrimination falling within the ambit of Section 13.1, does not make them such. The complaints of these plaintiffs are governed by the second sentence of Section 17.2 which reads as follows:

'17.2 Grievances arising on the job shall be processed in accordance with the procedure hereof beginning with 17.21. Other grievances as to which there are no specific provisions herein shall be processed in accordance with the provisions hereof beginning with 17.23.'

"Section 17.261 which was quoted supra, is the culminating section which commences with Section 17.23. For the information of this Court those intermediate sections read as follows:

'17.23 If the grievance is not settled in 17.21 and 17.22 or does not arise on the job, it shall be referred to the Joint Port Labor Relations Committee which shall have the power and duty to investigate and adjudicate it.

'17.24 In the event that the Employer and Union members of any Joint Port Labor Relations Committee *shall fail to agree upon any question before it,* such question shall be immediately referred at the request of either party to the appropriate Joint Area Labor Relations Committee for decision.

'17.25 In the event that the Employer and Union members of any Joint Area Labor Relations Committee *fail to agree on any question before it,* such question shall be immediately referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator shall be final and conclusive except as otherwise provided in 17.26. (Emphasis added.)

'17.26 The Joint Coast Labor Relations Committee has jurisdiction to consider issues that are presented to it in accordance with this Agreement and shall exercise such jurisdiction where it is mandatory and may exercise it

Appellants then point to Section 17.-261[4] of the agreement which is a general provision for grievance procedures growing out of actions of the joint committees. This provides for carrying the grievance to the Joint Coast Labor Relations Committee, and then provides as follows: "and, if the Joint Coast Relations Committee cannot agree, to the Coast Arbitrator for review." But in this instance the Joint Coast Labor Relations Committee did agree; hence, the appellants say, there is no provision requiring carrying the matter to arbitration since the action of the Joint Coast Labor Relations Committee would be final according to the contract.

We think that the appellants have a good point here and that it is arguable that what happened to them was not the kind of discrimination described in Section 13. We have here a very complicated set of facts. Numerous affidavits were filed and some of them have inaccuracies in them. For instance, the Goodenough and Robertson affidavits, for the employers, asserted that the plaintiffs complained of violations of Section 13 of the contract. That is not correct. The record

contains numerous copies of the written complaints by the plaintiffs. They are substantially the same as that contained in a letter written by each of the plaintiffs, a copy of which appears in the margin.[5] We have been unable to find any references to violations of Section 13. The complaints simply allege that they were "deregistered" as Class B longshoremen. To this extent, at any rate, the affidavits of these officers disclose a misunderstanding on their part.

In view of this very long and complicated record of over 700 pages, with numerous affidavits and pleadings, and an unsatisfactory record of alleged change in rules, we may have here what was called in Kennedy v. Silas Mason Co., 334 U.S. 249, 256, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, a "welter of new contentions and statutory provisions". In that case the Court said: "In addition to the welter of new contentions and statutory provisions we must pick our way among over a score of technical contracts, each amending some earlier one, without full background knowledge of the dealings of the parties. The hearing of contentions as to disputed

---

where such jurisdiction is discretionary as provided in 17.261, 17.262 and other provisions of this Agreement.'

"There is, consequently, no basis for the claim on the part of the defendants that the plaintiffs failed to exhaust their internal remedies by appealing to the Coast Arbitrator."

4. "17.261 Any decision of a Joint Port or Joint Area Labor Relations Committee or of an Area Arbitrator claimed by either party to conflict with this Agreement shall immediately be referred at the request of such party to the Joint Coast Labor Relations Committee (and, if the Joint Coast Labor Relations Committee cannot agree to the Coast Arbitrator, for review). The Joint Coast Labor Relations Committee, and if it cannot agree, the Coast Arbitrator, shall have the power and duty to set aside any such decision found to conflict with this Agreement and to finally and conclusively determine the dispute. It shall be the duty of the moving party in any case brought before the Coast Arbitrator under the provisions of this 17.261 to make a prima facie showing that the decision in question conflicts with this

Agreement, and the Coast Arbitrator shall pass upon any objection to the sufficiency of such showing before ruling on the merits."

5.                    "July 27, 1963
R. R. Holtgrave, Secretary
James Kearny, Chairman
JLRC (PMA-ILWU)
16 California Street
San Franciso, California
Dear Sirs: Your committee de-registered me on June 17. On July 24, I received your letter denying my hearing appeal. In so doing you consummated an action that is discriminatory. You have not judged all the men involved by the same standards. I appeal your decision and request another hearing as stipulated, where I will prove and document this discrimination.
I have never been able to get from you an official statement specifying the alleged charges against me, nor did your committee produce documents to substantiate the charges.
Would you please correct this situation for the next hearing.
                    Sincerely."

facts, the sorting of documents to select relevant provisions, ascertain their ultimate form and meaning in the case, the practical construction put on them by the parties and reduction of the mass of conflicting contentions as to fact and inference from facts, is a task primarily for a court of one judge, not for a court of nine." The Court there held that under the circumstances, which involved a summary judgment, it was better judicial administration not to affirm the summary judgment, but rather to remand the case for hearing and findings by the district court.

We are satisfied that a more accurate picture of the dispute here before us would be obtained if the trial court held a hearing and made findings which might well be based upon proper evidence as to just what transpired here.

Reversed and remanded for further proceedings consistent with this opinion.

MERRILL, Circuit Judge (concurring):

What we hold here is that plaintiffs' claims are not defeated by either primary jurisdiction of the NLRB over the claim against the union or failure of plaintiffs to press their grievances against the employers to arbitration. Remand is thus called for. For the guidance of the District Court on remand we also point out the insufficiency of the present record to support summary disposition of the case, and point up complexities with which the District Court, rather than this court, should struggle in the first instance.

I should like to add to the complexities with which Judge Pope has dealt one further aspect of the case which seems relevant to me, and with which I would hope the District Court, with aid of counsel, might concern itself. This, in general, is the scope and source of the collective bargaining agreement—the self-imposed body of law binding upon the association and the union in their dealings with each other. Specifically, I am in doubt as to the nature and function of the joint committees. Is their function purely adjudicatory—the resolution of grievance disputes? Or have they rule-making powers which invest them with authority to take action which then becomes a part of the body of law constituting the collective bargaining agreement? What was the nature of their action in deregistering plaintiffs? Was it rule making, or adjudication?

It seems to me that answers to these questions are relevant to the issues of whether the union "agreed" to deregistration; and of whether, by recognition of the deregistration, the employers violated the agreement as it then existed.

On Appellees' Petition for Rehearing.

PER CURIAM.

Counsel for the employers and counsel for the union have each filed petitions for a rehearing. An examination of the petitions indicates a misunderstanding of the reach of this court's opinion. As we read the petitions, we gather that they are based upon an assumption that this court has made findings and conclusions leading to the ultimate determination of the rights of the parties. As an examination of the opinion will disclose, it is limited to a disapproval of the summary judgment entered in the court below in view of our holding that the evidence received by the trial court suggests that were the case fully heard and the evidence available received, the appellants might well be entitled to recover.

Both petitions seem to assume that in dealing with the union's duty of fair representation we have held that any discrimination is sufficient to make a case against the union. The argument is that we neglected to note that the discrimination must be of "hostile or invidious" nature. This is a misconstruction of our opinion.

The opinion notes what the allegations were: "It is alleged that these new rules were arbitrary, not reasonably relevant to the treatment afforded Class B longshoremen; they were capricious, arbitrary and unfair, particularly as they were applied retroactively and to conduct that was not a violation of any rule

when it occurred; and that they were applied discriminatorily against plaintiffs."[1] Further along, the opinion again notes the allegations of the complaint: "The complaint attacks the alleged new rules as arbitrary, not reasonably relevant to the determination of which Class B longshoremen should be promoted to Class A; that they were irrelevant and capricious in determining who should be deregistered; * * *." This was followed by an extensive quotation from the complaint itself alleging that the rules applied were "arbitrary and unfair" and "arbitrarily and capriciously penalizing conduct" retroactively. Our conclusion was that the determinations of the contentions of the parties would be properly for the trial court after receipt of evidence.

We think that a reexamination of our opinion will disclose that it does not foreclose the parties from a complete hearing of their several contentions upon the trial on remand.

The petitions for rehearing are denied.

---

1. This is substantially the language used in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, where in describing the "duty of fair representation", the Court uses the words "arbitrary, discriminatory, or in bad faith."