Victor M. MAISONET, et al., Plaintiffs,

v.

TRAILER AND MARINE TRANSPORT,
INC. (TMT) and Union De Tronquistas
De Puerto Rico, Defendants,

Pablo Raul Pagan and Jose A. Hernandez, and others similarly situated,
Defendants-Intervenors.

Civ. No. 78–2409.

United States District Court,
D. Puerto Rico.

May 18, 1981.

P. E. Purcell-Ruíz, Hato Rev, P. R., for plaintiffs.

José A. Fernández-Paoli, Santurce, P. R., for defendants.

Vincent M. Rotolo, Santurce, P. R., for defendants-intervenors.

## OPINION AND JUDGMENT

CEREZO, District Judge.

This is one of those unfortunate cases which instead of moving forward drift about in a seemingly aimless manner. Claimants, initially involved in the process of their grievance before an arbitrator, abandoned that process to file this suit only to request reopening of the arbitration procedures years after its abandonment and upon being confronted with the exhaustion requirement. The action filed in this Court pursuant to the provisions of section 301 of the Labor-Management Relations Act, 29 U.S.C. Section 185 by individual employees alleges a violation of the collective bargaining agreement by their Union and employer Trailer and Marine Transport, Inc. (T.M.T.). It is alleged that while plaintiffs were employed by Berwind Lines, Inc., a corporation not a party to these proceedings, a collective bargaining agreement was entered into by said employer and the Union which guaranteed them certain seniority rights. Before the expiration of that agreement their employment with Berwind Lines, Inc. was terminated and they resumed work with another corporation, InterIsland Intermodal, Inc., allegedly under the terms of the contract with their former employer.

In June 1976 InterIsland Intermodal, Inc. was consolidated with defendant corporation whereupon plaintiffs were recognized certain seniority dates which they allege deprive them of the seniority rights acquired under the previous contract with Berwind Lines, Inc. In March 1977 defendant Union and T.M.T. entered into a collective bargaining agreement for a period of three years, commencing on March 26, 1977.

This complaint was filed on November 30, 1978. Default was entered against the Union on the 16th of July 1979. On January 22, 1980 T.M.T. filed a Memorandum Opposing Jurisdiction requesting the Court to decline jurisdiction because, pursuant to the collective bargaining agreement between it and defendant Union, on May 19, 1978 plaintiffs had requested arbitration before the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor, which procedure was pending in that forum at the time of filing the complaint. Plaintiffs concede that a request for arbitration was filed with the Department of Labor in April 1978 by the Union representatives, but contend that this was not done until two years after the Union had been contacted by them, that the issue submitted to arbitration was not that which they presented to the Union, and that the Union acquiesced to the postponement of the arbitration hearings on three occasions and on a fourth occasion requested the postponement. For these reasons plaintiffs decided to withdraw from the arbitration proceedings and filed this suit. It has been alleged by intervenors in this case that before withdrawing from the arbitration proceeding plaintiffs were offered the opportunity to litigate their case in that forum, represented by their own attorney, who had been present during previous stages in the process. This has not been disputed by plaintiffs. When confronted, plaintiffs' reaction was to return to the arbitration procedure. On December 12, 1978, upon plaintiffs' request the arbitration proceedings before the Puerto Rico Department of Labor were indefinitely suspended because the present action was pending in this Court.

As the case developed, other employees for T.M.T. who ranked higher in the seniority lists requested to intervene and were permitted to do so despite plaintiffs' objections. When confronted by the Court's inquiry as to the exhaustion of the contractual remedies, plaintiffs requested the Bureau of Conciliation and Arbitration to reopen their case on to the issue of seniority. This petition was denied and the case formally withdrawn from the Bureau because, in the opinion of the Bureau and according to *Blake v. U.S.M. Corp.*, 94 LRRM 2509 (D.C. N.H.1977), the Union alone had standing to request reopening of the arbitration proceedings.[1]

At present there is pending before us a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, filed by intervenors on the grounds that the complaint fails to state a cause of action against the defendant Union for violating its duty of fair representation towards plaintiffs and that plaintiffs had failed to adequately exhaust the contractual remedies for the resolution of grievances.

■ It is settled law that a union can be sued for breaching the responsibility of fair representation due to its members, and that such a cause of action arises under section 301 of the Labor-Management Relations Act. *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Motorcoach Employees of America v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971). This duty of fair representation consists of a "statutory obligation to represent all members of an appropriate unit [which] requires [the representative] to make an honest effort to serve the interests of all those members, without hostility to any." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337, 73 S.Ct. 681, 685, 97 L.Ed. 1048 (1953). A suit against the representative for breach of this duty can be joined with a suit against the employer for breach of the collective bargaining agreement. See: *Vaca v. Sipes*, *supra*, 386 U.S. at 187, 87 S.Ct. at 915; *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

■ The obligation of the collective bargaining representative to fairly represent all members of the appropriate unit extends to the negotiation of a collective bargaining agreement with the employer as well as to the enforcement of the resulting agreement. See: *Vaca v. Sipes, supra*, 386 U.S. at 177, 87 S.Ct. at 909. The complaint filed in this case would charge the Union with a violation of the duty to fairly represent plaintiffs during the renegotiation of seniority rights as the result of the merger between T.M.T. and InterIsland Intermodal, Inc. Plaintiffs allege that the Union "acting together with the convinance [sic] and agreement of defendant employer..." violated their seniority rights acquired as Berwind Lines employees. They state that this conduct constitutes an "illegal conspiracy" to deprive plaintiffs of their acquired rights and is a violation of the law.

■ "[C]onclusory words ... without a concomitant showing of lack of good faith [do] not set forth a claim." *Hardcastle v. Western Greyhound Lines*, 303 F.2d 182, 186 (9th Cir., 1962); *Colbert v. Brotherhood of Railway Trainmen*, 206 F.2d 9, 12 (9th Cir., 1953); *Gainey v. Brotherhood of Railway & Steamship Clerks*, 313 F.2d 318, 323 (3rd Cir., 1963); *Lusk v. Eastern Products Corp.*, 427 F.2d 705 (4th Cir., 1970); *Augspurger v. Brotherhood of Locomotive Engineers*, 510 F.2d 853, 859 (8th Cir., 1975). The complaint in this case alleges facts which in themselves do not constitute a violation of the Union's duty. The allegations merely state that there was a merger of corporations, the result of which led to an agreement between the Union and the new employer as to the rearrangement of seniority rights.

■ Precisely, a labor representative's duty to represent its members carries with it the authority to make decisions such as that involved in this case. *Ford Motor Co.*

---

1. The Union opposed reopening the case because counsel for the plaintiffs had no standing to petition the reopening of the case and because this case is still pending in this Court.

v. *Huffman, supra,* 345 U.S. at p. 339, 73 S.Ct. at p. 686. This authority has been described as:

"Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. A major responsibility of negotiators is to weigh the relative advantages and disadvantages of differing proposals. . . . Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ibid,* 337–338, 73 S.Ct. 685–686.

■ Plaintiffs in this case are the employees adversely affected by the merger and the resulting agreement between the Union and the employer as to the rearrangements of the seniority lists. The complaint states nothing more than dissatisfaction with this result. Aside from the words "conspiracy" and "connivance," the complaint does not state that the Union's decision in allowing plaintiffs' names to be placed at the bottom of the seniority lists was motivated by bad faith or hostility toward the plaintiffs. There are no allegations of racial discrimination or otherwise.[2] In *Hardcastle v. Western Greyhound Lines, supra,* 185, it was held that "[a]n essential element . . . necessary to raise a limitation upon a union's discretion in bargaining with respect to seniority rights is a bad faith motive, an intent to hostilely discriminate against a portion of the union's membership." The complaint lacks specific allega-

tions of bad faith, dishonest conduct or hostility or facts from which to infer the alleged conspiracy and fails to state a cause of action against the Union for unfair representation.

We note that the parties, especially plaintiffs, have focused the motion to dismiss and opposition thereto on one of the exceptions to the requirement of exhaustion of contractual remedies, specifically, the wrongful refusal of the Union to process the grievance. Although disposition of this case does not require passing on these issues, since the arguments have centered on the arbitration proceedings we feel compelled to examine some of the questions raised.

■ Plaintiffs have contended throughout the development of this case that they would not be adequately represented in the arbitration process simply because the Union represents *all* employees, meaning that both sets of employees having antagonistic interests would be simultaneously represented by defendant Union. Other claims of wrongful refusal by the Union are charges of having suspended the administrative hearing on one occasion and a two year delay before presenting their grievance to an arbitrator of the Labor Department. They merely state that a two year period elapsed between the merger and the processing of their grievance and from that bare assertion they would have us conclude that the delay was solely the Union's responsibility. They do not mention any efforts on their part to get the Union to initiate the arbitration mechanism or, if made, that these were fruitless because of Union disregard. See: *Soto-Segarra v. Sea-Land Services, Inc.,* 581 F.2d 291, 295 (1st Cir., 1978). They do not mention if prior grievance process steps had to be completed before the dispute went to the arbitrator. None of these contentions were made part of the complaint, and even if considered, they are insufficient to state a

---

**2.** Compare the allegations of the complaint with the allegations in the cases of *Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324,

89 S.Ct. 548, 21 L.Ed.2d 519 (1968) and *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

claim against the Union for wrongfully refusing to process the grievance thus foreclosing that remedy. The undisputed factual situation before us is that of an arbitration mechanism which was available but voluntarily abandoned by plaintiffs because of doubts and lack of faith in their Union representative due to the fact that the Union represented both groups of employees, a situation not uncommon in labor disputes.[3] No justification has been presented for "sidestepping" the grievance mechanism provided by the bargaining agreement. See: *Hines v. Anchor Motor Freight, supra,* 424 U.S. at 563, 96 S.Ct. at 1055; *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Soto-Segarra v. Sea-Land Service, supra,* at 294–296.

An exception to the exhaustion requirement has been recognized for cases involving allegations of a conspiracy between the union and the employer to deprive employees of their rights, *Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1968). Although the complaint is so aimed, it lacks factual allegations sufficient to bring it within that exception. Other than the general conclusory statement that the defendants "conspired" to deprive plaintiffs of their seniority rights the complaint discloses no facts relative to conduct or acts of defendants in furtherance of a conspiracy. The bare allegation of the existence of a conspiracy, without more, is insufficient to state a cause of action. See: *Battle v. Clark Equipment Co.,* 579 F.2d 1338, 1345–1346 (7th Cir., 1978); *Lusk v. Eastern Products Corp., supra,* 708.

Defendants-intervenors' Motion to Dismiss is GRANTED, without prejudice of plaintiffs' right to initiate another action if the other parties involved in the arbitration of their grievance obstruct their access to the administrative forum. The parties are ORDERED to return to the arbitration process. Any other solution would be legalistic and leave plaintiffs remediless.

SO ORDERED AND ADJUDGED.

3. It is undisputed that the Union did take the grievance to arbitration.