**Stephen T. AGUINAGA, Janet Brown, Wayne Pappan, et al., Plaintiffs,**

v.

**JOHN MORRELL & COMPANY, United Food and Commercial Workers International Union, AFL–CIO/CLC and Local Union 340, United Food and Commercial Workers, Defendants.**

**Civ. A. No. 83–1858.**

United States District Court, D. Kansas.

Feb. 20, 1985.

Robert C. Brown, Wichita, Kan., for plaintiffs.

William H. Dye, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for John Morrell & Co.

Irving M. King, Peggy A. Hillman, Cotton, Watt, Jones & King, Chicago, Ill., Richard A. Shull, Moore & Shull, Wichita, Kan., for United Food and Commercial Worker International Union, AFL–CIO/CLC and Local Union 340, United Food and Commercial Workers.

## OPINION AND ORDER

THEIS, District Judge.

## I. NATURE OF THE CASE

This is an action brought under section 301 of the Labor Management Relations

Act, 29 U.S.C. § 185 (1964), in which plaintiffs seek compensatory and injunctive relief and class certification. Plaintiffs are those persons employed by defendant John Morrell & Company (Morrell) under a master agreement negotiated on behalf of plaintiffs by defendant United Food and Commercial Workers International Union (International) and its local chapter, defendant Local 340 (Local). The case is currently before the Court on the motions of defendants International, Local and Morrell to dismiss and plaintiffs' motion for class certification. For the reasons that follow, the motions to dismiss shall be denied and the motion for class certification shall be granted.

## II. FACTUAL ALLEGATIONS

Plaintiffs allege that on or about June 19, 1982, defendant Morrell closed its Rodeo facilities in Arkansas City, Kansas, which closing terminated the employment of plaintiffs and members of plaintiffs' class. This closing, according to plaintiffs, was effected for the purpose of avoiding the provisions of an agreement with respect to payment of wages and other benefits. On or about March 23, 1983, Morrell resumed operations at the Arkansas City facilities under the division head of Ark City Packing Company (Ark City facilities) but refused to recall employees in the bargaining unit who had worked pursuant to the agreement. Plaintiffs contend that Morrell, by closing the Rodeo facilities, terminating plaintiffs, reopening the Ark City facilities and failing to reemploy plaintiffs, has circumvented the terms and conditions of the bargaining agreement.

As to defendants International and Local, plaintiffs allege that the unions failed to pursue grievance procedures established by the agreement and by law to protect plaintiffs. In addition, plaintiffs argue that International and Local renegotiated a separate agreement with Morrell subsequent to March 23, 1983, under which defendant unions would become the exclusive bargaining agents for the new bargaining unit at Morrell's Ark City facilities. Plain-

tiffs contend that the abandonment of plaintiffs' grievances and the renegotiation between defendants Morrell and unions made resort to union grievance procedures futile.

Defendants unions' and Morrell's contentions in their motions to dismiss will be considered jointly. Defendants argue that plaintiffs fail to state a claim because they make only conclusory allegations. Further, defendants contend that this Court lacks subject matter jurisdiction in that claims of unfair labor practices are within the exclusive jurisdiction of the National Labor Relations Board (NLRB). Defendants suggest in addition that the action is barred by the six month statute of limitations in 29 U.S.C. § 160(b). Finally, defendant unions claim that plaintiffs have failed to allege that they have exhausted internal union remedies.

## III. FAILURE TO EXHAUST/FAILURE TO STATE A CLAIM

Although defendants attempt to separate the issues, the question of pleadings sufficient to state a claim and allegations necessary to excuse failure to exhaust contract grievance procedures are inextricably intertwined. Defendants contend that this Court lacks jurisdiction due to plaintiffs' failure to exhaust internal grievance procedures. Plaintiffs respond that such exhaustion would be futile and allege that the union breached its duty of fair representation.

The United States Supreme Court has held that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, covers suits by employees against their employers. *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). When collective bargaining agreements provide for grievance procedures, however, unless the employees exhaust these remedies, they may not bring suit under section 301. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The grievance procedures need not be exhausted before bringing an action on the con-

tract when the plaintiff alleges the union has breached its duty of fair representation, *VACA v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), or when the plaintiff claims that resort to the grievance procedure would be futile. *Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

■ As to the ultimate burden of proof regarding the claim of breach of the duty of fair representation, plaintiffs must establish that the union's refusal to process the grievance was "arbitrary, discriminatory or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916. Defendant Morrell cites cases suggesting that the conduct complained of must be more than mere negligence. *See, e.g., Harris v. Schwerman Trucking Co.,* 668 F.2d 1204 (11th Cir. 1982); *Ruzicka v. General Motors Corp.,* 649 F.2d 1207 (6th Cir.1981); *Findley v. Jones Motor Freight,* 639 F.2d 953 (3d Cir. 1981). Defendant unions argue that the mere allegation that a grievance should have been processed does not state a claim for relief, citing *Medlin v. Boeing Vertol Co.,* 620 F.2d 957 (3d Cir.1980).

First, the Third Circuit in *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 875 (3rd Cir.1972), held that "[e]ven the mere perfunctory handling of a grievance by a union might be sufficient basis for a finding of a breach of the duty of fair representation that would excuse exhaustion of the grievance procedure and arbitration." In fact, in *Ruzicka,* 649 F.2d at 1211, cited by Morrell, the Court of Appeals for the Sixth Circuit held that when the union failed to process a grievance without a "sound reason," the union could be liable for unfair representation. In *Pesola v. Inland Tool and Manufacturing, Inc.,* 423 F.Supp. 30, 35 (E.D.Mich.1976), the court held that "the negligent processing of a grievance may be arbitrary." Thus, at trial plaintiffs may attempt to sustain their ultimate burden of proof by any one of a number of routes.

But at thus juncture the Court is only concerned with the burdens of proof relevant to a motion to dismiss. The Court would note that all of the above cases cited by defendants reached the courts in procedural postures different from that of the present case. Defendants have filed a motion to dismiss, not a motion for summary judgment as in *Harris* or a post trial motion as in *Ruzicka.* For the award of a motion to dismiss, it must appear that plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Kennedy v. Meacham,* 540 F.2d 1057, 1060 (10th Cir.1976). Defendants have not specifically addressed whether plaintiffs can meet this standard.

In addition to the breach of the duty of fair representation, another exception, or perhaps reformulation of the exception in *Vaca,* is the futility of exhaustion. In *Fizer v. Safeway Stores, Inc.,* 586 F.2d 182, 183 (10th Cir.1978), the Tenth Circuit Court of Appeals noted that a claim of futility will suspend the general requirement of exhaustion. The court stated that an employee's vague, subjective conclusions did not approach the requisite of a "clear and positive showing of futility." *Id.* In *Fizer,* however, the court was analyzing a summary judgment motion, not a motion to dismiss. It is much easier for a plaintiff to withstand a motion to dismiss than a motion for summary judgment.

■ In the instant case, plaintiffs allege a conspiracy of employer and unions regarding the closing of the old plant, the reopening of the new plant, the failure to represent plaintiffs in bargaining and the renegotiation of a separate contract between defendants unions and employer. Under quite similar facts in *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 875 (3d Cir.1972), the court held that exhaustion of grievance procedures was not required when the employee alleged a conspiracy of employer and union to discharge him from work. The application of the futility rule to the present case makes policy sense. Employees should not be required to exhaust the very internal grievance remedies that they claim cannot afford them relief. In sum, plaintiffs argue

both the futility of exhaustion and a breach of the duty of fair representation as exceptions to the requirement that plaintiffs exhaust grievance procedures.

The sole issue at the present time, though, is whether plaintiffs' complaint can withstand a motion to dismiss. Defendants contend that plaintiffs have failed to state a claim because they did not make factually specific allegations, citing, among other cases, *Wallace v. American Telephone & Telegraph Co.*, 460 F.Supp. 755, 760 (E.D. N.Y.1978), *Collins v. Wilson Foods Corp.*, No. 77–2235 (D.Kan., *unpublished*, March 15, 1978), and *Johnson v. Wilson Foods Corp.*, No. 77–2051 (D.Kan., *unpublished*, August 26, 1977). The Court finds the Kansas cases cited unpersuasive.

Reliance by defendants on *Collins* is misplaced. The complaints in *Collins* and the present case contain significant factual differences. In *Collins* plaintiff claimed only that he received "no aid or support" from his union. The court found this allegation insufficient on its face to survive a motion to dismiss. In the instant case, however, plaintiffs not only make the more specific claim that they filed a grievance and the unions failed to pursue it, they also allege a conspiracy between unions and employer, pointing to the renegotiation agreement. Plaintiffs thus suggest that any further pursuit of internal union remedies would be futile. It is apparent that plaintiffs in the present case have made much more detailed allegations than those made by the plaintiff in *Collins.*

Although the *Johnson* case was before the court on a motion to dismiss, which the court properly treated as a motion for summary judgment, the court applied the standard of *Amalgamated Association of Street, Electric Railway and Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971), in which the United States Supreme Court required the plaintiffs to demonstrate "substantial evidence of fraud, deceitful action, or dishonest conduct." *Lockridge*, however, was an appeal after the case had proceeded to judgment in the lower court

and the "substantial evidence" standard was used by the Court to refer to plaintiffs' *ultimate* burden of proof. In *Johnson* plaintiffs were only required to survive a summary judgment motion and in the present case plaintiffs must merely survive a motion to dismiss. To require a plaintiff to present "substantial evidence" at the motion to dismiss stage and the same wealth of evidence again at trial forces the plaintiff to shoulder the burden of persuasion twice in a single lawsuit.

■ The requirement of "substantial evidence," of course, must be distinguished from the requirement of factually specific allegations. The former burden is not the sort of demonstration that can or should be required of plaintiffs at this preliminary stage. Cases cited by defendant unions suggest that the complaint must contain facts from which improper motivation might be inferred. *Maisonet v. Trailer and Marine Transport, Inc.*, 514 F.Supp. 1129, 1132 (D.P.R.1981). Even if this Court were to hold plaintiffs to the standard of a factually specific complaint that defendants demand, plaintiffs meet that requisite.

■ Although the complaint does not delineate every possible detail, plaintiffs have alleged sufficient facts to state a cause of action. Pleadings should be liberally construed to insure that the ultimate issue is reached, *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and defendants obviously comprehend plaintiffs' allegations and have not been prejudiced in any way by a lack of extreme detail in plaintiffs' complaint.

The crux of defendants' argument is that the bald allegation of bad faith and the mere recitation of failure to process a grievance are insufficient to state a claim. While plaintiffs' initial complaint may not be a masterpiece of craftsmanship, plaintiffs have on the face of their complaint made sufficient allegations to withstand a motion to dismiss. Plaintiffs allege reasons supporting a possibility that defendant Morrell and defendants International

and Local jointly engaged in conduct prejudicial to plaintiffs and plaintiffs allege facts suggesting independent wrongful conduct.

Plaintiffs suggest that the closing of the Rodeo facilities "was effected by defendant Morrell for the purpose of avoiding the provisions of the agreement with respect to payment of wages and other benefits and constituted a violation of the agreement." Dk. no. 1, ¶ 13. Plaintiffs further allege specific facts regarding the resumption of operations by defendant Morrell at the Ark City facilities and Morrell's failure to recall employees in the bargaining unit. Regarding International and Local, plaintiffs not only allege failure to represent plaintiffs' interests by refusal to pursue grievance procedures, plaintiffs also claim a renegotiation of a separate agreement between Morrell and International and Local under which defendant unions received certain advantages to the detriment of plaintiffs. Here the very fact that plaintiffs allege a covert conspiracy between unions and employer makes it particularly inappropriate to assume that plaintiffs' lack of factual specifity reflects a fatal weakness in their theory of causation. Obviously, they cannot, prior to trial, be expected to know the precise details of the renegotiation agreement between International and Local and Morrell.

Finally, allegations held to be sufficient to state a cause of action under 29 U.S.C. § 185 virtually mirror those in plaintiffs' complaint. In *Zamora v. Massey-Ferguson, Inc.*, 336 F.Supp. 588 (S.D.Iowa 1972), the court held that allegations that the employee was wrongfully discharged by the company, that the union perfunctorily processed his grievance, and that the actions of the company and the union were part of a conspiracy between them to deprive the plaintiff of his rights under the collective bargaining agreement were sufficient to survive a motion to dismiss. Similarly, in *Crawford v. Pittsburgh-Des Moines Steel Co.*, 386 F.Supp. 290 (D.Wyo. 1974), an employer defended that the employee had failed to exhaust contractual remedies in the face of a claim for breach of a collective bargaining agreement. The court noted that the employee could bring the action provided the employee could prove that the union as bargaining agent breached its duty of fair representation. In determining that the action should not be dismissed, however, the court held that whether the union properly refused to process the employee's grievance was ultimately an issue of fact which necessitated proof at trial. *Id.* at 296. In light of the above cases and plaintiffs' contentions, plaintiffs have made a sufficient showing to withstand a motion to dismiss and should be given the opportunity to prove their claims at trial.

## IV. THE STATUTE OF LIMITATIONS AND SUBJECT MATTER JURISDICTION

The next two issues are again interrelated: whether this Court has jurisdiction or whether exclusive jurisdiction rests with the National Labor Relations Board, and whether the statute of limitations bars plaintiffs' claims. The interdependence of these questions is explained below.

██ Defendants correctly recite the general proposition that the NLRB has exclusive jurisdiction in cases involving unfair labor practices. Federal district courts, however, have jurisdiction over suits to enforce collective bargaining agreements even though an employer's conduct which is challenged as a breach of contract is also arguably an unfair labor practice. *Vaca*, 386 U.S. at 187, 87 S.Ct. at 915. The fact that a violation of a labor contract may also constitute an unfair labor practice does not deprive the federal district court of jurisdiction. *Lockridge*, 403 U.S. at 298, 91 S.Ct. at 1923.

██ It should be noted that this Court has independent federal question jurisdiction for the claim of violation of the duty of fair representation. The origin of the duty is statutory, *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), and suits for breach of a statutory duty may be brought under federal ques-

tion jurisdiction, 28 U.S.C. § 1331, which plaintiffs specified in their complaint. *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87 (3d Cir.1968); *Williams v. Pacific Maritime Association*, 384 F.2d 935 (9th Cir. 1967).

Plaintiffs contend that defendants breached their collective bargaining agreement. Defendants respond that plaintiffs' claims, if based on the plant closing, which occurred approximately 15 months before this complaint was filed, are time-barred under the six month statute of limitations in 29 U.S.C. § 160(b). Next defendants suggest that the only claims plaintiffs can assert are associated with the plant reopening. But no collective bargaining agreement was in effect at the time the plant was reopened. Therefore, defendants conclude that any claims regarding the plant reopening are unfair labor practice claims which fall within the exclusive jurisdiction of the NLRB.

Defendants' argument regarding the NLRB's exclusive jurisdiction hinges upon the application of the six month statute of limitations to bar claims associated with the closing of the plant. If the six month statute of limitations is tolled, the act of defendant Morrell in closing the plant may be examined and the collective bargaining agreement would be in contention, precluding exclusive jurisdiction by the NLRB.

Defendants note that in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court established the statute of limitations in section 301 cases as six months. The consideration of events outside the six month period depends upon the gravamen of the unfair labor practice complaint. The general rule regarding the statute of limitations was established in *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). In *Local Lodge No. 1424* the United States Supreme Court held that events occurring prior to six months before the filing of a charge may not constitute the basis of an unfair labor practice charge, but that "earlier events may be utilized to shed light on

the true character of events occurring within the limitations period." *Id.* at 416–17, 80 S.Ct. at 826–27.

A significant exception to this distinction between the use of anterior events in an evidentiary fashion and use of events to resurrect a stale claim is the concept of equitable tolling. As the Supreme Court noted in *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)), when a party "has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered....'" The *Holmberg* Court also noted that "[t]his equitable doctrine is read into every federal statute of limitations." *Id.*

Plaintiffs claim that "the manifestation of wrongdoing by defendant Morrell did not occur until the reopening of the Ark City facilities in March, 1983," but suggest that the reopening was part of a continuing plan to circumvent the obligations of the collective bargaining agreement in effect during June, 1982, when the plant was closed. Dk. no. 21, pp. 14–15. Plaintiffs do not accomplish a thorough job of researching the law regarding tolling of the statute of limitations. The Court has reviewed the cases concerning equitable tolling and finds that they fully substantiate plaintiffs' position.

Numerous cases confirm that the limitation period begins to run when the plaintiffs discover or should have discovered the acts constituting the violation. *See, e.g., NLRB v. Allied Products Corp.*, 548 F.2d 644, 650 (6th Cir.1977); *NLRB v. International Longshoremen's & Warehousemen's Union*, 549 F.2d 698, 700 (9th Cir. 1977). In *Amcar Division, ACF Industries, Inc. v. NLRB*, 592 F.2d 422, 430 (8th Cir.1979), the employer's concealment of the fact that it subcontracted with the bargaining unit without bargaining with respect thereto tolled the six month period. The statute of limitations was similarly tolled in *NLRB v. Don Burgess Construc-*

*tion Corp.*, 596 F.2d 378, 383 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979), when an employer fraudulently concealed the unlawful employment of nonunion carpenters from the union.

██ It is clear that fraudulent concealment tolls the statute of limitations and it should be noted that the extent of lapse of time alone is irrelevant. In *International Ladies Garment Workers Union v. NLRB*, 463 F.2d 907, 922 (D.C.Cir.1972), the court held that when an employer actively concealed from a union its decision to relocate, the union did not fail to exercise sufficient diligence to justify the tolling of the statute of limitations due to the mere fact that more than 16 months elapsed between the initial hearing, when the clue to the falsity was discovered, and the filing of the charge.

██ In the present case, the entire premise of plaintiffs' claim is that Morrell covertly closed the Rodeo plant and reopened the Ark City plant to avoid contractual obligations. Plaintiffs further contend that they did not and, in fact, could not have notice of the alleged scheme until the reopening in March of 1983. To the extent that plaintiffs timely filed the present action within six months after they discovered the alleged violation, the current action is not barred by the statute of limitations. Furthermore, since the action is not barred and because the time of the violation relates back to the closing of the Rodeo plant, the bargaining agreement in effect at that time may be challenged. Thus, part of the present action challenges the violation of a labor contract and, under the ruling in *Lockridge*, the NLRB does not have exclusive jurisdiction.

## V. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have included within their complaint a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs move to have included within the class "all union members of defendants International and Local

employed by defendant Morrell on or about June 19, 1982, and the immediate prior months." Dk. no. 1, p. 4. Rule 23(a) contains four prerequisites to a class action; these are often denominated as numerosity, commonality, typicality, and adequacy of representation. In addition, before a case may be certified as a class action, it must fit within one of the three categories of class action suits described in Rule 23(b). *Wilcox v. Commerce Bank*, 55 F.R.D. 134 (D.Kan.1972), *aff'd*, 474 F.2d 336 (10th Cir. 1973). The Court finds that the present suit meets all of the prerequisites of Rule 23(a) and that this case fits into the category described in Rule 23(b)(2).

### A. *Numerosity*

██ Numerosity refers to the requirement that the number of members in the putative class be so large as to make joinder of all putative class members impracticable. Fed.R.Civ.P. 23(a)(1). Whether this requisite has been met can only be determined by examining the particular facts of the case. *Horn v. Associated Grocers, Inc.*, 555 F.2d 270 (10th Cir.1977). In this case, plaintiff points out that Morrell had over 700 employees on June 19, 1982. It is clear that the numerosity requirement is met in this case. The Court finds that the number of members in the putative class makes their joinder impracticable, if not impossible.

### B. *Commonality*

██ Commonality refers to the prerequisite that the putative class must share common questions of law or fact. Fed.R. Civ.P. 23(a)(2). This requisite is met in the instant case. All employees of Morrell who were covered by the collective bargaining agreement on June 19, 1982, would presumably be making the same arguments of breach of the duty of fair representation, circumvention of the agreement, and so on. Questions of law applying to one would apply to all. The Court finds these common questions of law and fact sufficient to satisfy the requirements of commonality.

### C. *Typicality*

The prerequisite of typicality holds that the claims of the representative parties must be typical of the claims of the putative class. Fed.R.Civ.P. 23(a)(3). Stephen T. Aguinaga, Wayne Pappan and Janet Brown claim to have been employed at Morrell at the time in question and contend that they were subjected to the actions of defendants unions and Morrell which allegedly deprived them of wages and other benefits. These claims would be typical of the putative class. The named plaintiffs need not be in a position identical to that of every member of the putative class. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir.1975). The Court finds that Aguinaga, Pappan and Brown meet the typicality requirement of Rule 23(a)(3).

### D. *Adequacy of Representation*

Adequacy of representation refers to the requirement that the named plaintiffs will adequately protect the interests of the putative class. Fed.R.Civ.P. 23(a)(4). This standard requires that the attorney of the named plaintiffs is qualified and capable of conducting the litigation and that the named plaintiffs' interests are not antagonistic to the interests of the putative class. *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459 (10th Cir.1974). While counsel for plaintiffs did not research the issue of equitable tolling as thoroughly as this Court would have liked, the Court cannot say that counsel is unqualified or incapable of conducting the litigation in a competent manner. In addition, the Court is unaware of any antagonism between the interests of the named plaintiffs and the putative class. Therefore, the Court finds that the requirement of adequacy of representation has been satisfied by the named plaintiffs.

### E. *Rule 23(b)(2)*

This case fits within the category of cases described in Rule 23(b)(2). Rule 23(b)(2) defines a category of cases in which "the party opposing the class has acted or failed to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole." Fed.R. Civ.P. 23(b)(2). The actions of the defendants with respect to the collective bargaining agreement are generally applicable to all putative class members, as are the actions of defendant Morrell in closing the Rodeo facilities. The compensatory and injunctive relief sought by Aguinaga, Pappan and Brown would be appropriate relief for the class as a whole. Rule 23(b)(2) applies to cases in which "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(2). Since the named plaintiffs have stated no individual claims which would not be applicable to the class as a whole, the present action meets the above requirements.

### F. *Defining the Class*

Plaintiffs have requested the Court to certify as a class "all union members of defendants International and Local employed by defendant Morrell on or about June 19, 1982, and the immediate prior months." Since the Court does not want to engage in a line-drawing exercise with respect to which "immediate prior months" should be encompassed, the Court will opt for the less arbitrary cut-off of June 19, 1982. Thus, the Court certifies as a class all union members of defendants International and Local employed by defendant Morrell on June 19, 1982.

### VI. CONCLUSION

The Court finds that all of the prerequisites of Rule 23(a) have been met and that this case fits within Rule 23(b)(2). In addition, the Court holds that plaintiffs have alleged with enough particularity facts sufficient to withstand defendants' motions to dismiss. Finally, the Court finds that the principle of equitable tolling saves plaintiffs from the Scylla of exclusive NLRB

**1280**

jurisdiction and the Charybdis of the six month statute of limitations.

IT IS THEREFORE ORDERED that defendants' motions to dismiss are hereby denied.

IT IS FURTHER ORDERED that plaintiffs' motion for class certification is granted and that this case be certified as a class action with plaintiffs Aguinaga, Pappan and Brown to represent the class of all union members of International and Local employed by defendant Morrell on June 19, 1982.