Michael McCAULEY, et al., Plaintiffs,

v.

Otis BOWEN, Secretary of Health and Human Services, Defendant.

No. 83–1514.

United States District Court, D. Kansas.

Oct. 30, 1986.

Edward L. Keeley, Crockett & Keeley & Gilhousen, Wichita, Kan., for plaintiffs.

Steve Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on plaintiffs' motion for certification of a class pursuant to Fed.R.Civ.P. 23, plaintiffs' motion for summary judgment, and defendant's motion to affirm the secretary's decision. Plaintiffs had either their Supplemental Security Income benefits terminated or were denied them upon application because of the Social Security Administration's decision that their residence at the "White House" rendered them ineligible.

Plaintiffs move to have the class include: The named plaintiffs and all participants in the Sedgwick County Department of Mental Health's transitional living program who had Supplemental Security Income benefits denied or terminated based on a determination that they were inmates of a public institution while residing at a facility known as the "White House."

Defendant objects to certification of any class which would include individuals who cannot satisfy the jurisdictional requirements of 42 U.S.C. § 405(g).

■ Section 405(g) provides in relevant part:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

The final decision requirement is comprised of two elements. The first is jurisdictional and nonwaivable—a claim for benefits is presented to the Secretary. The second is waivable—the claiming party exhaust all administrative remedies before requesting judicial review. *Heckler v. Day*, 467 U.S. 104, 110 n. 14, 104 S.Ct. 2249, 2253 n. 14, 81 L.Ed.2d 88, 95 n. 14 (1984); *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 763–65, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975); *Bartlett v. Schweiker*, 719 F.2d 1059, 1060–61 (10th Cir.1983). In the present case, the Secretary argues the intended class members fail to meet both the jurisdictional and waivable requirements.

### A. *Presentation Requirement.*

■ An application for benefits is sufficient to satisfy this requirement under 405(g). *Mathews v. Eldrige*, 424 U.S. at 329, 96 S.Ct. at 900; *Johnson v. Heckler*, 769 F.2d 1202, 1208 (7th Cir.1985), *appeal pending*, —— U.S. ——. ("[T]hey ... have given the Secretary an opportunity to rule on concrete 'claims'....") *See also Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Where the claimant's benefits have been terminated, the claimant must present the claim that his benefits should not be terminated. *Mathews*, 424 U.S. at 329, 96 S.Ct. at 900. (A claim was presented by answering a state agency questionnaire and by responding by letter to the tentative determination that claimant's disability had ceased.) Claimants must question the initial determination that they cease to be disabled. *Heckler v. Lopez*, 463 U.S. 1328, 1334–35, 104 S.Ct. 10, 14, 77 L.Ed.2d 1431 (Rehnquist, Cir.J.

granting a stay), *motion to vacate stay denied* 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983). *See Wheeler v. Heckler*, 719 F.2d 595 (2d Cir.1983) (Presentment requirement not met where terminated recipient fails to initiate even informal communications with the Secretary.)

Plaintiffs have drafted the class to include members who have failed to meet the jurisdictional requirement of presenting a claim. For purposes of addressing the other class certification requirements, the court redefines the proposed class to include those who have had their benefits terminated and thereafter have presented a claim for benefits or have attempted to have their termination reconsidered, as well as those persons who were denied benefits upon initial application.

### B. *Exhaustion of Administrative Remedies.*

Before seeking judicial review, a claimant must pursue fully the administrative remedies prescribed by the Secretary. *Ringer*, 466 U.S. at 617, 104 S.Ct. at 2022. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors...." *Weinberger v. Salfi*, 422 U.S. at 765, 95 S.Ct. at 2467.

The exhaustion requirement is waivable either in the discretion of the Secretary or where the court may infer such a waiver. *Bowen v. City of New York*, 476 U.S. ——, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Reed v. Heckler*, 756 F.2d at 783; *see Mathews v. Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900. If satisfied that no further review is necessary because the agency's internal needs are met or because the relief demanded is beyond his authority, the Secretary may waive this requirement. *Bartlett*, 719 F.2d at 1061. The court may infer waiver "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900.

The Supreme Court recently identified the two factors in *Eldridge* which influenced the court in not deferring to the agency's determination of finality:

> First, the constitutional challenge brought there was "entirely collateral to [a] substantive claim of entitlement." *Ibid* Second, the claim rested on the proposition that full relief cannot be obtained at a postdeprivation hearing." *Id.*, at 331, 47 L.Ed.2d 18, 96 S.Ct. 853.

*Bowen v. City of New York*, 476 U.S. at ——, 106 S.Ct. at 2031, 90 L.Ed.2d at 477. From the discussions and holdings in *Bowen v. City of New York*, 476 U.S. at —— ——, 106 S.Ct. at 2031–2033, 90 L.Ed.2d at 476–79, and *Reed v. Heckler*, 756 F.2d 779, 783–85 (10th Cir.1985), the court infers a waiver of the exhaustion requirement as to the purported class.

The Rule 23 prerequisites to a class action, as often stated, are numerosity, commonality, typicality, and adequacy of representation. *Aguinaga v. John Morrell & Co.*, 602 F.Supp. 1270, 1278 (D.Kan.1985). The court finds that the proposed class, as amended by this court to meet the presentation requirement, does not satisfy the numerosity prerequisite.

■ Numerosity refers to that portion of Rule 23(a)(1) which provides: "The class is so numerous that joinder of all members is impracticable." This consideration obviously depends upon the particular facts of the case. *Aguinaga*, 602 F.Supp. at 1278. In proving that joinder is impracticable, the party asserting the existence of a class must present some evidence of ascertainable numbers or a reasonable estimate of the number of class members possibly involved. *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir.1978). No precise formula nor minimum standard exists to assess whether a class is so numerous that it should be certified. Even if the exact number of potential class numbers is unknown, plaintiff must demonstrate a large number. *In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 601 (E.D.Mich.1985). Besides actual number of the proposed class, expediency and inconvenience are factors in the determination of whether joinder is impracticable. *Dirks v. Clayton Brokerage Co. of St. Louis Inc.*, 105 F.R.D. 125, 131 (D.Minn.1985). Certification of a class lies within the trial court's discretion and will be denied if the numerosity requirement is not met. *Rex*, 585 F.2d at 436.

■ In their proposed class, plaintiffs alleged 200 potential class members on the assumption that most of the residents of the "White House" had Supplemental Security Income (SSI) benefits terminated or denied upon application. Even if this assumption is accepted, the court does not believe from the record that a sufficiently large group of former "White House" residents have satisfied the presentation requirement. As the court finds no merit to plaintiffs' claims, for reasons stated later, potential class members are not seriously prejudiced by the court's denial of the motion to certify the class.

Plaintiffs were residents of the "White House," an apartment building consisting of twelve apartments with a capacity of five persons in each. During their residence, plaintiffs participated in a transitional living program operated by the Sedgwick County Department of Mental Health. They participated voluntarily and were able to withdraw at any time. The program consisted of a residential component, including room, food, security, and an available professional staff. The other component of the program is the treatment or therapy. Plaintiffs paid for the residential component on a sliding scale, ranging at that time from $175 to approximately $310 a month. Their payments were intended to meet the cost of the residential component. Plaintiffs also paid an additional daily amount for the treatment component of this program.

In the SSI facility information and determination completed on November 17, 1980, the acting district manager concluded that the "White House" was a public institution and not a medical treatment facility, and, in support, noted:

> The White House is a transitional living facility operated by the Sedgwick County Department of Mental Health.

It opened August 14, 1980 and has an average of 15 to 20 residents. It is not a medical treatment facility and Title XIX makes no payment toward cost of room and board.

The residents are billed according to their ability to pay. If the bill is unpaid the county assumes the cost. If the residents have no income, they are required to file for General Assistance with the Department of Social and Rehabilitation Services. The General Assistance is paid by the vender directly to White House. (Transcript, 100.) After a hearing, the Administrative Law Judge held that plaintiffs while living at the "White House" were not inmates of a public institution within the meaning of 42 U.S.C. § 1382(e)(1)(A) and were eligible for SSI benefits.

In 1972, Congress created the Supplemental Security Income program " '[t]o assist those who cannot work because of age, blindness, or disability,' S.Rep. No. 92-1230, p. 4 (1972), by 'set[ting] a Federal guaranteed minimum income level for aged, blind, and disabled persons,' Id., at 12." *Schweiker v. Wilson*, 450 U.S. 221, 223, 101 S.Ct. 1074, 1077, 67 L.Ed.2d 186 (1981) (footnote omitted.) "Disabled" persons include those "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months," 42 U.S.C. § 1382c(a)(3)(A). Some limitations on eligibility are found in 42 U.S.C. § 1382(e), and one limitation particularly relevant to this case provides: "Except as provided in subparagraphs (B), (C), and (D), no person shall be an eligible individual or eligible spouse for purposes of this subchapter with respect to any month if throughout such month he is an inmate of a public institution." 42 U.S.C. § 1382(e)(1)(A).

■ In the present case, the administrative law judge (ALJ) focued on the term, "inmate" within the above limitation in concluding that individuals who voluntarily reside in a public institution and pay for their lodging and services are not inmates under Section 1382(e)(1)(A). (Transcript, 15–16.)

The ALJ considered the Secretary's regulation defining "inmate of a public institution" [20 C.F.R. § 416.231(b)] as contrary to the law and applied a definition focusing on the voluntariness of residence. (Transcript, 14.) *See Levings v. Califano*, 604 F.2d 591 (8th Cir.1979).

The Appeals Council reversed the ALJ's decision relying in part on the decision of *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074. Plaintiffs thereupon filed their complaint with this court arguing that they are not "inmates" under Section 1382(e)(1)(A) and that the Secretary's regulations violate the equal protection clause. The court agrees with the Appeals Council that the decision of *Schweiker v. Wilson* is controlling precedent against the plaintiffs' contentions.

Plaintiffs argue that the ALJ properly interpreted the term "inmate" and that this court should adopt that construction and follow the decision of *Levings v. Califano*. Plaintiffs attempt to distinguish *Schweiker v. Wilson*, as involving inmates of state mental hospitals and that the Supreme Court never addressed the issue of whether "inmate" includes a voluntary resident.

It is fundamental that a court in interpreting a statute should not read a section of the statute in isolation of the entire statute, nor should it focus on a single word or sentence without considering the object and policy of the statute. *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). The express language of Section 1382(e)(1)(A) indicates it is a general exclusion qualified by the exceptions specified in subparagraphs (B), (C), and (D). *See Schweiker v. Wilson*, 450 U.S. at 224, 101 S.Ct. at 1077; *Cospito v. Heckler*, 742 F.2d 72, 77 (3rd Cir.1984), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (1985). Subparagraph (B) creates a partial exception by providing a small amount of benefits to an eligible individual in "a hospital, extended care facility, nursing home, or intermediate care facility receiving payments (with respect to such individual or spouse) under a State plan approved under subchapter XIX [Medicaid]...." Subparagraph [C] ex-

cludes from the definition of "public institution" a "publicly operated community residence which serves no more than 16 residents." Subparagraph [D] creates an exception for a person who resides in a public emergency shelter for the homeless for any month as long as this residence does not exceed three months for any 12–month period. By their wording and location within the statute, these exceptions are carved from the general exclusion for an "inmate of a public institution." None of these exceptions relies on any distinction regarding a person's voluntary residence in a public institution, but each instead focuses on the particular nature of the public institution. If the construction of "inmate" advanced by plaintiffs were the intention of Congress, the exceptions would be meaningless as they never would have been within the exclusion. To attach any more significance to "inmate," besides a meaning of residence, would deprive subparagraphs (B), (C), and (D) of any rational and consistent meaning.

The above construction of "inmate" is the same as that followed and applied by the Supreme Court in *Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074. The court does not consider its reliance on *Wilson* for this construction as giving precedential weight to dictum. In holding that Section 1382(e) does not classify directly on the basis of mental health, the Supreme Court construed that subsection and outlines those groups excluded. 450 U.S. at 224, 231–32, 101 S.Ct. at 1077, 1081. It is apparent from reading this decision that the Supreme Court used the terms "inmate" and "resident" interchangeably. The court finds no merit to plaintiffs' argument that they are not "inmates" within the meaning of 42 U.S.C. § 1382(e)(1)(A).

Plaintiffs next contend that 20 C.F.R. § 416.201 which defines "resident of a public institution" violates their right to equal protection of the laws. Somewhat uncertain as to the specifics of plaintiffs' argument, the court believes plaintiffs' consider the regulatory classification which includes them but excepts students who reside in public university dormitories lacks any rational basis. The apparent reason for the exception of a person residing in a public educational institution for the primary purpose of receiving educational or vocational training is that the person is preparing for gainful employment. Soc. Sec. Ruling 83–22.

Classifications need not be perfect and will be upheld if they rationally advance a reasonable and identifiable governmental objective. *Schweiker v. Wilson,* 450 U.S. at 234–35, 101 S.Ct. at 1082–83. Considering together the rational basis for the overall classification observed in *Wilson* with the purpose of the educational pursuit exception, the court finds that the latter exception is based on rational reasons.

IT IS THEREFORE ORDERED that the plaintiffs' motion to certify the class is denied;

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is denied, and that defendant's motion to affirm is granted.