**Don OLENHOUSE, Alan Sharp and John Rubow on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**COMMODITY CREDIT CORPORATION, et al., Defendants.**

**Civ. A. No. 89–1029–T.**

United States District Court, D. Kansas.

May 10, 1991.

Karen McIlvain, Madison, Kan., for Olenhouse, Sharp and Rubow.

Steve Lester, U.S. Attys. Office, for Commodity Credit.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Presently before the court is the motion of defendants for dismissal for lack of jurisdiction and the motion of plaintiffs for class certification. This action is against the Secretary of the United States Department of Agriculture ("USDA") and various officials of federal agencies associated with that Department. Plaintiffs allege violations of the Agricultural Act of 1949, 7

U.S.C. §§ 1421 *et seq.*, the Agricultural Adjustment Act of 1938, 7 U.S.C. §§ 1281 *et seq.*, the Food Security Act of 1985, Pub.L. No. 99–198, 99 Stat. 1354, as well as the regulations promulgated under these acts. Plaintiffs also allege an unconstitutional taking of a contractual property interest in violation of the fifth amendment to the United States Constitution.

## I. *Background*

All three plaintiffs are owner and tenant farmers residing in rural areas of Wilson County, Kansas. Plaintiff John Rubow is also a landlord of farmland in this county. Each plaintiff is a participant in a farm price and income support program administered by the Agricultural Stabilization and Conservation Service ("ASCS"), an agency of the Department of Agriculture. Defendant Commodity Credit Corporation ("CCC") is the entity authorized to provide price support payments to farmers. 7 U.S.C. § 1421 *et seq.*

### A. Statutory and Regulatory Scheme

Pursuant to 16 U.S.C. § 590h(b) (1988), the Secretary is directed to "utilize the services of local and State committees" formed under the aegis of the Secretary for the purpose of administering federal grant-in-aid programs for farmers. Among his duties, the Secretary must "ensure that information concerning changes in Federal laws in effect with respect to agricultural programs and the administration of such laws are communicated in a timely manner to local committees in areas that contain agricultural producers who might be affected by such changes." *Id.* § 590h(b) (as amended by Food Security Act of 1985, Pub.L. No. 99–198, § 1711(a), 99 Stat. 1354, 1635–36 (1985)). The ASCS provides these local and state committees with a handbook that sets forth their authority and duties, the policies of ASCS, and how the policies are to be implemented. If a farmer acts in good faith reliance upon the advice of a representative of the State or local committee, the ASCS or CCC may accept such good faith performance as meeting the re-

quirements for the applicable program. 7 C.F.R. §§ 790.2, 791.2 (1991).

The particular price support program at issue in this case concerns "deficiency payments" that are made when the average market price for a crop falls below the target price or loan rate established by the government. Pursuant to 7 U.S.C. § 1445b–3(c)(1)(A) (1988), the Secretary must make available deficiency payments to participating farmers for crops grown in each of the years from 1986 through 1990. One factor entering into the calculation of the amount of these deficiency payments is the "farm program payment yield" for the crop. *Id.* § 1445b–3(c)(1)(A)(iii). In accordance with 7 U.S.C. § 1446(b)(1), the farm program payment yield for each of the 1986 and 1987 crop years was to be the average of the farm program payment yields for the 1981 through 1985 crop years, excluding the years when such yield was the highest and the lowest.

The regulation implementing the farm program payment yields is located at 7 C.F.R. § 713.6 (1987),[1] which provides in part:

> For the purpose of determining the amount of any deficiency payment … or the amount of any disaster payment … the farm program payment yield for a farm shall be reduced in accordance with instructions issued by the Deputy Administrator to reflect:
>
> (1) Any reduction in the current year's yield for such farm which is the result of causes *other than a natural disaster or other condition beyond the producer's control,* such as a change in farming practice; . . . .

*Id.* § 713.6(c) (emphasis added). The 1986/87 ASCS Handbook sets forth the circumstances under which the local committees are to reduce the farm program payment yield for purposes of deficiency payments. Paragraph 414A of the Handbook provides that yields should be reduced if: farming practices for the current year have significantly changed; the changed practice would normally result in a sub-

---

**1.** This section was redesignated in 1989 and now appears at 7 C.F.R. § 1413.6 (1991).

stantially lower yield; there is a lower production than the farm's normal practices would be expected to produce; and the change was due to reasons within the farmer's control. Paragraph 414B of the Handbook directs that reductions are not to be made for conditions that are a direct result of a disaster.

Pursuant to his statutory responsibility, the Secretary has established "an administrative appeal procedure which provides for an administrative review of determinations made with respect to farm acreage bases, crop acreage bases, and farm program payment yields." 7 U.S.C. § 1469 (1988). If a participating farmer is dissatisfied with the local committee's determination of matters such as farm program payment yields, the person is entitled to a review and informal hearing with first, the State committee, and then the Deputy Administrator. 7 C.F.R. §§ 780.4, 780.5 (1991). At the informal hearing, the producer or his representative is to be given "a full opportunity to present facts and information relevant to the matter in issue and may present oral or documentary evidence." *Id.* § 780.8(c). The reviewing authority must then prepare "a written record containing a clear, concise statement of the facts as asserted by the producer or participant and material facts found by the reviewing authority." *Id.* § 780.8(d).

### B. Plaintiffs' Factual Allegations

This dispute concerns the dissatisfaction of numerous farmers in Wilson County with the deficiency payments for their 1987 wheat crop. Due to heavy rains in September and October of 1986, wheat that had already been planted was flooded out, and many fields could not be replanted until November 1986 through March 1987. The complaint indicates that the effect of the rains on ASCS policy for wheat deficiency payments was the subject of considerable confusion between the local and State committees. At the request of the Wilson County ASCS committee, a special meeting with the state committee was held in Tope-

ka, Kansas on January 13, 1987. The purpose of the meeting was to determine what course of action was permissible to be eligible for deficiency payments. The meeting was attended by plaintiffs and approximately 60 other farmers from Wilson, Montgomery, Neosho, and Labette Counties. Plaintiffs allege that they were told to plant wheat, and that no one informed them that yield reductions, *i.e.*, reductions in deficiency payments, would occur. Plaintiffs further allege that wheat is not generally considered a profitable crop without deficiency payments, and that plaintiffs would not have planted wheat had they been notified of the possibility of yield reductions.

Under the belief that they would receive full deficiency payments for their wheat, plaintiffs planted late wheat from January through March of 1987. In a letter dated April 2, 1987 to the Wilson County ASCS office, however, the State Director of ASCS indicated that he expected yields to be reduced due to excessively late planting. Plaintiffs allege that they were not told of the possibility of yield reductions at this time.

On October 5, 1987, after the 1987 crop had been harvested,[2] District Director Lloyd Johnston recommended yield reductions of 25% for wheat planted in January 1987, 50% for wheat planted in February 1987, and 100% for wheat planted in March 1987. In response to an earlier request for clarification by plaintiff Don Olenhouse, the National Administrator of ASCS—Milton Hertz—wrote Mr. Olenhouse on December 10, 1987. This letter informed Mr. Olenhouse that the County Committee's initial decision not to reduce deficiency payments had erroneously been based upon Paragraph 414 of the ASCS Handbook, which paragraph had been superseded.

By letter dated December 23, 1987, plaintiffs and all other owner/tenant farmers were notified that there would be a temporary one-year yield reduction for wheat they had planted in January through March of 1987. The letter advised that ASCS

---

**2.** Defendants' motion to dismiss indicates that there is some dispute regarding the success or failure of the 1987 wheat crop in Wilson County. Doc. 15, at 3.

program regulations required a temporary yield reduction for deficiency payment computations if the planting date, variety or cultural practices were significantly changed from practices used when the wheat field for the farm was established. Apparently, the ASCS reasoned that wheat planted in January through March does not produce as good a yield as does wheat planted in the fall, although plaintiffs dispute the scientific basis for this conclusion. Plaintiff Olenhouse alleges that although most of his wheat was planted in December 1986—and the yield reductions were to be effective only for wheat planted after December 31, 1986—his deficiency payments for his entire crop were reduced by 20%. The December 23 letter was sent to all adversely affected owner/tenant farmers of the proposed class and also advised these members of their right to appeal. Because the landlord members of the proposed class received no letter, however, these persons received no notice of their right to appeal any yield reductions.

Prior to any administrative hearing, the ASCS set off advance deficiency payments due to farmers by the amount of the temporary yield reduction. Plaintiffs allege that the setoffs of advance payments caused cashflow difficulties and economic hardship because plaintiffs had calculated receipt of these payments into their operating budgets.

The State Committee conducted informal hearings during the week of February 22–26, 1988, which proceedings were recorded by a certified court reporter retained by plaintiffs. Plaintiffs received what are described as "form letters" dated March 9, 1988, which denied relief on the grounds that "the yield reductions are in accordance with previously established policy and program provisions, and additional relief cannot be granted." Plaintiffs allege that these letters were contrary to ASCS policy and regulations because they did not account for individual facts presented at the hearings, and because they did not state the facts relied upon. Plaintiffs further allege that the records made by the State Committee were incomplete and did not adequately represent the events of the hearings.

Each plaintiff of the proposed class of tenant/owners requested a review of the State Committee's decision by the Deputy Administrator, State and County Operations ("DASCO"). Throughout late April and early May of 1988, DASCO conducted informal telephone hearings, which procedure plaintiffs challenge as contrary to law and ASCS regulations. DASCO refused to accept the record of the State Committee hearings as recorded by the certified court reporter retained by plaintiffs. Plaintiffs received a "form letter" dated June 10, 1988, in which DASCO found that plaintiffs had not been misinformed by county office personnel regarding the payment yields, and that both the county and state committees had used and followed correct procedures in reducing the yields.

Plaintiffs challenge the actions of defendants as arbitrary and capricious under 5 U.S.C. § 706, in that: (1) defendants failed to comply with the laws, regulations, and manual provisions regarding deficiency payments and the appeal process; (2) defendants failed to provide adequate and timely notice of yield reductions; (3) defendants failed to use any scientific method in determining and implementing yield reductions; and (4) defendants' findings are not supported by the record and are unwarranted by the facts. Plaintiffs also allege due process violations under the fifth amendment for defendants' failure to give adequate and timely notice of the yield reductions, the method used for calculating the deficiency payments, and the procedures followed at all stages of the hearing process. Plaintiffs seek relief in the form of: (1) an injunction enjoining and restraining defendants from reducing plaintiffs' deficiency payments and applying setoffs to payments to which plaintiffs are otherwise entitled; (2) a declaratory judgment that the actions, policies and practices of defendants are contrary to law; (3) such other relief as the court finds appropriate.

## II. *Defendant's Motion for Dismissal*

Defendants contend that the United States Claims Court has exclusive jurisdic-

tion over this dispute and, accordingly, move for dismissal on the ground of lack of subject matter jurisdiction.

### A. Reviewability Under the Administrative Procedures Act ("APA")

The APA does not provide an implied grant of subject matter jurisdiction to the district courts. *See Califano v. Sanders,* 430 U.S. 99, 105–07, 97 S.Ct. 980, 984–85, 51 L.Ed.2d 192 (1977); *Eagle–Picher Indus., Inc. v. United States,* 901 F.2d 1530, 1532 (10th Cir.1990). Rather, if review of an administrative action is appropriate under the APA, the district court's subject matter jurisdiction is derived from some other statute, such as the federal question jurisdiction statute, 28 U.S.C. § 1331. *Adamson v. Radosevic,* 685 F.Supp. 814, 817 (D.Kan.1988).

■ The initial question is whether the Secretary's denial of deficiency payments constitutes reviewable agency action under the APA. The right of a party to challenge an administrative action in the federal district courts is governed by the terms of §§ 702–03 of the APA:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added). The right of review is further subject to § 704, which provides in part:

> Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review.

5 U.S.C. § 704 (emphasis added).

In *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court interpreted the above emphasized portions of these statutes to allow district court review of a denial of federal Medicaid funds to the Commonwealth of Massachusetts. Addressing the requirement that the relief sought be "other than money damages," the Court emphasized "the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay, or for 'the recovery of specific property *or monies,* ejectment from land, or injunction either directing or restraining the defendant officer's actions.' " *Id.,* 108 S.Ct. at 2731–32 (quoting *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949)) (emphasis added by *Bowen* Court). Adhering to this distinction, the Court found that plaintiff's suit was not one "seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.,* 108 S.Ct. at 2735 (emphasis in original).

The Court also found that the Claims Court did not afford an adequate substitute for review by the District Court. The Court held that § 704, although intended to avoid duplicative jurisdictional authority to review the decisions of agencies, should not be interpreted "to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Id.* at 2737. Recognizing the potential for conflict between the Claims Court's jurisdiction under the Tucker Act and a District Court's review of agency action under the APA, the Court cast doubt on the adequacy of the Claims Court as the primary forum for the review of agency action involving ongoing regulatory relationships:

> [T]he policies of the APA take precedence over the purposes of the Tucker Act. In the conflict between two stat-

utes, established principles of statutory construction mandate a broad construction of the APA and a narrow interpretation of the Tucker Act. The Court of Claims is a court of limited jurisdiction, because its jurisdiction is statutorily granted and it is to be strictly construed. *Bowen v. Massachusetts*, 108 S.Ct. at 2739 n. 46 (quoting *Delaware Div. of Health & Human Servs. v. DHHS*, 665 F.Supp. 1104, 1117 n. 15 (D.Del.1987)). *See also Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1279 n. 14 (10th Cir.1991).

*Bowen v. Massachusetts* directs that the court first consider whether plaintiffs are seeking money damages as compensation for a loss, or rather specific relief that may or may not take the form of the payment of money. The prayer for relief seeks an injunction enjoining defendants from reducing plaintiffs' deficiency payments and setting off plaintiffs' advance payments, and also seeks a declaratory judgment that the actions of defendants are contrary to law. The form of relief requested is not dispositive, however, and the court must determine whether the purpose of the action is to obtain money damages from the government. *See, e.g., Colorado Dep't of Highways v. United States Dep't of Transp.*, 840 F.2d 753, 755 (10th Cir.1988); *Cessna Aircraft Co. v. Department of the Navy*, 744 F.Supp. 260, 263 (D.Kan.1990).

The court finds that plaintiffs are seeking specific relief rather than money damages from the United States. First, the action does not involve the recovery of money as compensation or a substitution for some loss. Plaintiffs seek to enforce the statutory mandate of § 308(c)(1)(A) of the Food Security Act of 1985, Pub.L. No. 99–198, 99 Stat. 1354, 1384, which directs that "[t]he Secretary *shall* make available to producers payments" as determined by statute and regulation. 7 U.S.C. § 1445b–3(c)(1)(A) (1988) (emphasis added). As with the disallowance decision challenged in *Bowen v. Massachusetts*, this action can be considered, at most, an attempt to enforce that to which plaintiffs may be entitled under a federal grant-in-aid program that is of a type intended by Congress to be subject to judicial review. *See* 108 S.Ct. at 2734.

Second, even allowing that the ultimate object of plaintiffs' efforts is the recovery of monies from the government, it is unclear whether an order from this court granting such relief would be the necessary or even appropriate result of plaintiffs' success on the merits. In *Esch v. Yeutter*, 876 F.2d 976 (D.C.Cir.1989), plaintiffs were nine farmers who had applied for price support payments and had also submitted a bid for participation in the USDA's conservation reserve program. The state committee had told plaintiffs that they would remain eligible to participate in the conservation reserve program until the state office told them otherwise. Plaintiffs relied upon these representations and did not plant wheat during the winter season. Thereafter, and without formal notice, the Department suspended payments to the farmers under both programs. Plaintiffs filed suit in district court, which granted an injunction enjoining any denial of subsidy payments to plaintiffs in one year, and remanded the case to the USDA for further proceedings. The appellate court affirmed the district court's assumption of jurisdiction over the case:

> [Plaintiffs'] specific complaint is that the procedures leading up to the Department of Agriculture's decision to deprive them of payments were totally inadequate. The redress they want—a redetermination, in a fair and impartial hearing, of their status under the subsidy statutes—simply is not money damages in compensation for legal injury they allegedly have suffered.
>
> ... Here, ... a reversal would merely invalidate the reasons proffered for the reduction of benefits, and would require no more than reexamination of the administrative decision on the merits.

*Esch*, 876 F.2d at 984.

Plaintiffs in this case have raised allegations that call into question the adequacy of the ASCS's procedural review, as well as the ASCS's compliance with statutory and regulatory law. If this court were to find that the ASCS has violated its regulations,

or otherwise acted in an arbitrary and capricious manner, the ordered relief might well take the form of a remand to the ASCS to conduct the appropriate review.[3] Moreover, the district court's jurisdiction is not defeated by the fact that a remand or some form of injunctive or declaratory relief may ultimately lead to the payment of monies from the federal government. As this court recently recognized:

> That a suit for nonmonetary relief may later be the basis for an award of damages against the United States does not deprive the court of jurisdiction. If the declaratory or injunctive relief sought "has significant prospective effect or considerable value apart from merely determining monetary liability of the government," the district court may take jurisdiction over the nonmonetary claims.

*Cessna Aircraft Co. v. Department of the Navy*, 744 F.Supp. 260, 264 (D.Kan.1990) (citations omitted). *See also Esch*, 876 F.2d at 984 (district court's jurisdiction is not foreclosed simply because a reversal of the administrative action on the merits may result "inexorably in payment of money from the federal treasury").

For similar reasons, the court finds that the Claims Court does not afford plaintiffs an adequate substitute for review by this court. As noted, the Supreme Court's decision in *Bowen* "has indicated the importance of district court review of agency action in preference to Claims Court Tucker Act jurisdiction." *Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1279 n. 14 (10th Cir.1991). Like the Medicaid Act addressed by the *Bowen* Court, the intricate statutory and regulatory scheme for farm deficiency payments is not designed simply to remedy particular "past injuries or labors for which various federal statutes provide compensation." 108 S.Ct. at 2737 n. 39. When an agency administers a statute that governs complex ongoing relationships, the district court's authority to review agency action should take precedence over the Claims Court Tucker Act jurisdiction.[4] *Id.* at 2737–38.

Moreover, the possibility of remand to the ASCS rather than an outright award of a sum of money casts doubt upon the jurisdiction of the Claims Court. Because the Claims Court lacks equitable jurisdiction, the Claims Court arguably has no authority to grant the necessary and appropriate relief for this action. *See Esch*, 876 F.2d at 984–85. If the need for prospective relief in the form of a declaration should arise, the Claims Court would be powerless to act. *Bowen*, 108 S.Ct. at 2737–38.

In accordance with the analysis prescribed by *Bowen v. Massachusetts*, the court concludes that this suit is not one for money damages against the government, and that an adequate remedy is not available in the Claims Court.[5] Thus, jurisdic-

---

**3.** There is no substantive distinction between a mandatory injunction, seeking to compel agency action that exceeds the agency's statutory and regulatory discretion, and a mandamus. *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564, 567 (10th Cir.1981). Thus, the court's authority to compel such action may be based either on its federal question jurisdiction, 28 U.S.C. § 1331, its mandamus jurisdiction, *id.* § 1361, or both. *See also* 5 U.S.C. § 706(1) (court may compel agency action wrongfully withheld).

**4.** In contrast, simple contract disputes with the government involving claims in excess of $10,-000 remain within the jurisdiction of the Claims Court. *See Eagle–Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 n. 1 (10th Cir.1990); *Cessna Aircraft Co. v. Department of the Navy*, 744 F.Supp. 260, 264 (D.Kan.1990).

**5.** Defendants also argue that under the Tucker Act, the Claims Court is a court of exclusive jurisdiction for any claim against the United States exceeding $10,000 that is "founded upon either the Constitution, or any Act of Congress, or any regulation of an executive department....." 28 U.S.C. §§ 1491(a)(1), 1346(a)(2). As explained by the Supreme Court in *Bowen*, however, the Tucker Act confers such "exclusive" jurisdiction upon the Claims Court "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." 108 S.Ct. at 2740 n. 48. *See also Hamilton Stores, Inc. v. Hodel*, 925 F.2d 1272, 1277 n. 11 (10th Cir.1991). As with *Bowen*, this court has determined that the challenged administrative action is a reviewable decision under the APA, and that jurisdiction is therefore proper under 28 U.S.C. § 1331. *See* 108 S.Ct. at 2730 n. 16 ("it is common ground that if review is proper under the APA, the District Court had jurisdiction under 28 U.S.C. § 1331"); *Esch*, 876 F.2d at 979 n. 23 (inquiry into Tucker Act jurisdiction is still

tion lies in this court under 28 U.S.C. § 1331.

## III. *Class Certification*

■ Plaintiffs move to certify this as a class action pursuant to Fed.R.Civ.P. 23. The Rule authorizes one or more members of a class to maintain an action as a representative only if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition to these prerequisites, the action must fall within one of three categories of class actions as specified in Rule 23(b).

The district court enjoys wide discretion in determining whether a suit should be maintained as a class action. *Rex v. Owens ex rel. Oklahoma,* 585 F.2d 432, 436 (10th Cir.1978); *Sollenbarger v. Mountain States Telephone & Telegraph Co.,* 121 F.R.D. 417, 422 (D.N.M.1988). Rule 23 receives a liberal interpretation, *King v. Kansas City S. Indus., Inc.,* 519 F.2d 20, 25 (7th Cir.1975), and the district court should resolve all doubts in favor of class certification. *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Sollenbarger,* 121 F.R.D. at 435. Although the court must examine the factual and legal issues to determine the appropriateness of class certification, the court may not examine the merits of the controversy. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988); *Sollenbarger,* 121 F.R.D. at 422.

### A. Rule 23(a) Requirements

#### 1. Numerosity

The numerosity requirement entails an examination of the facts of each case, and

proper to determine the availability of an adequate remedy in another court). Thus, the existence of jurisdiction under § 1331 refutes the

there are no absolute limitations. *General Tel. Co of Northwest, Inc. v. E.E.O.C.,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). The party seeking certification of a class "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex,* 585 F.2d at 436. In assessing the impracticality of joinder, the court should consider the difficulty of identification, the interests of judicial economy, and the inconvenience if joinder were required. *McCauley v. Bowen,* 659 F.Supp. 292, 295 (D.Kan.1986).

Plaintiffs do not know the precise number of members in the proposed class because they have not had access to the ASCS records that would provide this information. Based upon comments made by ASCS officials during the administrative appeal process, however, plaintiffs estimate that at least 50 producers completed the administrative appeals with regard to the reduction in deficiency payments at issue. This number does not include the landlords, who received no notice of their right to appeal. Plaintiffs suspect that the number of adversely affected landlords is insubstantial, but again, have no access to this information that is held by the ASCS.

The court finds that joinder of all potential members would be impracticable in this case, and that the numerosity requirement is met. The good faith estimate of at least 50 members adversely affected by the agency action persuades the court that the proposed class is of sufficient size to be maintained as a class action.

#### 2. Commonality

The court also finds common questions of law and fact. The inquiry under Fed.R. Civ.P. 23(a)(2), as opposed to Rule 23(b)(3), is not whether common questions of law and fact predominate, but only whether such questions exist. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988). The factual and legal questions shared by the proposed members appear to be the inclement

contention that the questionable jurisdiction of the Claims Court in this case is exclusive.

conditions resulting in the delayed planting and the agency's uniform response to the farmers' queries and grievances. It is irrelevant that the amounts of reductions in deficiency payments to the individual farmers may differ, for it is the action and policies of the ASCS with respect to the farmers as a whole that are challenged. *See Adamson,* 855 F.2d at 676 (different claims of individual class members not sufficient to defeat declaratory and injunctive action to compel Secretary of HHS to follow law). Moreover, and as already discussed, the task of this court may well be confined to a determination of whether the agency has generally acted illegally with respect to all 1987 deficiency payments for the farmers in Wilson County. If plaintiffs prevail, the individual circumstances of each case would then be appropriate for the agency's consideration upon remand.

### 3. Typicality

The element of typicality requires that the representative possess the same interest and suffer the same injury as the class members. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982); *Sollenbarger,* 121 F.R.D. at 424. *See also Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 270 (10th Cir.1975). The claims of the representative, however, need not be identical to those of other class members. *Sollenbarger,* 121 F.R.D. at 424. The court should determine whether the claims of the representative are significantly antagonistic to those of the class members. *Id.*

The court finds this element to be satisfied. All representatives appear to have claims that are similar and non-antagonistic to other owner/tenant farmers aggrieved by the ASCS's decision. Plaintiff John Rubow will be allowed to represent the landlords affected by the agency's actions.

### 4. Adequacy of Representation

The final prerequisite to certification requires both that the attorney for the named plaintiff be qualified and capable of conducting the litigation, and that the named plaintiff's interests are not antagonistic to the interests of the class members. *Aguinaga v. John Morrell & Co.,* 602 F.Supp. 1270, 1278 (D.Kan.1985). Plaintiffs' counsel state that they are knowledgeable and experienced in matters relating to both the law governing the farm program and the conduct of class actions. Counsel further submit that their work itself in the case thus far demonstrates their qualifications to conduct this litigation. The court fully agrees, and finds that counsel of record for the named plaintiffs in this action can adequately represent the interest of the proposed class.

### B. Rule 23(b) Classification

Plaintiffs submit that this action satisfies the requirements of Fed.R.Civ.P. 23(b)(2), which allows certification of the class if:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the class as a whole;....

As already discussed, the action cannot be considered as one for money damages against the government. Rather, plaintiffs allege that the Secretary has violated the law in a manner that is generally applicable to the class members, for which plaintiffs seek "declaratory relief and an injunction directing the Secretary to follow the proper law...." *Adamson,* 855 F.2d at 676. The court therefore concludes that this action may be maintained as a Rule 23(b)(2) class action. *See generally Linquist v. Bowen,* 633 F.Supp. 846, 860 (W.D.Mo.1986) (class actions challenging policies or procedures of governmental agencies typically fall under Rule 23(b)(2)), *aff'd,* 813 F.2d 884 (8th Cir.1987).

### C. Class Definition

Plaintiffs have not proposed a definition of the class, and the court therefore assumes that plaintiffs seek only to include those farmers in Wilson County who were adversely affected by the agency action. At this time, the court will include all producers who received reductions in their deficiency payments regardless of whether the producer was an owner/tenant or landlord, and regardless of whether the produc-

er exhausted his administrative appeals. *See Linquist,* 633 F.Supp. at 858 (class members were not required to exhaust administrative remedies when challenging administrative policy, and thus, court would not define class to include only those who had exhausted remedies), *aff'd,* 813 F.2d at 887 n. 10. If the need to define a broader or narrower class should become necessary, the court will redefine the class at the appropriate time. *See Sears v. Atchison, Topeka & Santa Fe Ry.,* 749 F.2d 1451, 1456 (10th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

### D. Notice

■ By its terms, the individual notice requirements of Fed.R.Civ.P. 23(c)(2) are inapplicable to class actions for declaratory or injunctive relief maintained under Rule 23(b)(2). *Eisen v. Carlisle & Jacquelin* 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 21 n. 14, (1974); *Linquist,* 633 F.Supp. at 862. Thus, Rule 23(b)(2) actions are subject only to the notice requirements of Fed.R.Civ.P. 23(d):

> [T]he court may make appropriate orders ... (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action....

Although individual notice is not required for Rule 23(b)(2) actions, the district court has discretionary power to require such notice as it finds necessary to protect the interests of the absentee members. *Sperry Rand Corp. v. Larson,* 554 F.2d 868, 876 (8th Cir.1977); *Ives v. W.T. Grant Co.,* 522 F.2d 749, 764 (2d Cir.1975).

The court does not believe that individual notice is required in this action. If plaintiffs prevail on the merits, and the court determines that the Secretary must conduct new hearings, the court's order can only be beneficial to the unnamed members. Conversely, if the Secretary's general policies and procedures were not illegal, no class member would be entitled to relief. Under these circumstances, the court finds that notice by publication in a journal of general circulation in Wilson County will be sufficient in this case. Plaintiffs shall submit to the court for approval a proposed notice within 15 days of this order. The notice should state the general nature of the action and the defined class. In addition, the notice should list the names and addresses of the attorneys representing the named class members, and should also inform the members that they may express to the court whether they consider such representation to be fair and adequate.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion to dismiss for lack of jurisdiction (Doc. 15) be denied.

IT IS FURTHER ORDERED that plaintiffs' motion for class certification (Doc. 6) be granted. This case is hereby certified as a class action with the named plaintiffs herein, and their counsel of record, as the representatives of that class of all persons in Wilson County, Kansas who received reductions in their 1987 wheat deficiency payments by virtue of the actions of the United States Department of Agriculture and the agencies operating under its authority. As specified in this order, plaintiffs' counsel shall submit within 15 days of this order a proposed notice to be published in a newspaper or other journal of general circulation in Wilson County.